

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

FILED

JUN 0 5 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

| | | |
|---|---|---|
| ROBERT STAFFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-00921-JDK-JDL |
| | § | |
| TRANS UNION, LLC, and EQUIFAX | § | |
| INFORMATION SERVICES LLC, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S OMNIBUS MOTION TO COMPEL DISCOVERY, TO DEEM REQUESTS FOR ADMISSION ADMITTED, FOR A PROTECTIVE ORDER, AND FOR MANDATORY CIVIL SANCTIONS

Pursuant to Rules 26, 33, 34, 36, and 37 of the Federal Rules of Civil Procedure and Local Rules CV-7(h) and CV-7(i) of the Eastern District of Texas, Plaintiff Robert Stafford respectfully files this Omnibus Motion to Compel Discovery, to Deem Requests for Admission Admitted, for a Protective Order Regulating Deposition Sequencing, and for Mandatory Civil Sanctions against Defendant Trans Union, LLC ("Defendant" or "TransUnion").

## I. PRELIMINARY STATEMENT

This Motion arises from a continuous, calculated continuum of discovery evasion, procedural oppression, and explicit docket manipulation executed by Defendant Trans Union LLC and its counsel, Paul L. Myers. Over the course of three months, Defendant has systemically refused to fulfill its statutory discovery obligations under the Fair Credit Reporting Act (FCRA). When cornered by the active intervention of this Court, Defendant engaged in explicit gamesmanship—manufacturing an "agreement in principle" solely to escape a court-supervised discovery conference, only to immediately weaponize the resulting cancellation by demanding Plaintiff sign away core federal rights under threat of litigation.

1

Plaintiff, an unrepresented consumer, has exhausted every good-faith administrative mechanism. Defendant has answered this good faith with professional condescension, a hostile two-hour extra-procedural interrogation, and the structural suppression of backend databases. To preserve the truth-seeking function of these proceedings, protect Plaintiff's upcoming civic jury obligations, and uphold the integrity of the judicial calendar, Plaintiff requests that the Court quash Defendant's boilerplate objections, deem its evasive responses admitted, stay his deposition, and enter a formal finding of bad faith on the record.

## II. CHRONOLOGICAL TIMELINE OF DEFENDANT'S BAD-FAITH MANEUVERS

**March 30, 2026:** Plaintiff perfected service of his First Set of Interrogatories, First Requests for Production, and First Requests for Admission via electronic mail. Defendant's email servers registered zero bounce-backs or delivery failures (Exhibit MM). Shortly thereafter, Defendant served Plaintiff with its own discovery requests.

**April 16, 2026 (The Judicial Record):** During the formal Rule 26(f) conference, Equifax Counsel Jennifer Brooks explicitly stated to Magistrate Judge Love on the record that any omissions or incompleteness within the credit file disclosures were "not Equifax's fault, but were entirely the fault of the underlying data-furnishing banks who failed to supply the complete information." Defendant TransUnion's counsel, Paul L. Myers, textually and verbally concurred with Ms. Brooks' representation directly to the Court. Defendants explicitly shifted liability away from their credit reporting networks by representing to a federal judge that the data-furnishing banks were solely responsible for the truncated and missing payment data streams.

**April 23, 2026:** Plaintiff transmitted his complete Discovery production packet. Three hours later, defense counsel Paul Myers claimed total ignorance of Plaintiff's March 30 discovery requests, stating: *"I am not sure what happened with your email, but I will need an extension...*

2

*Will you agree to a 21-day extension... making the new deadline May 20, 2026? I would prefer not to bother the court with a formal motion."* Notably, Defense Counsel had never previously experienced issues receiving mail at that email address.

**April 24, 2026:** Plaintiff resent the March 30 files alongside explicit metadata, transmission headers, and photographic sent-folder captures proving service was perfected under FRCP 5(b)(2)(E). Plaintiff offered to grant the extension on the mutual condition that his June deposition be postponed to ensure an adequate review window. Defense Counsel flatly rejected the reciprocal courtesy, labeled Plaintiff's position "curious," and aggressively squeezed the timeline down to a 7-day window under threat of court action. Plaintiff accepted the May 6 deadline to avoid clogging the docket.

**May 6, 2026:** Defense Counsel served its certified responses (Exhibit B). A forensic review revealed that while Defense's corporate representative signed the verification under oath on April 30 (one week *after* Defense claimed the documents were never received on March 30), the document production delivered on May 6 consisted of obsolete, 2025 front-end data with a few minor pages, entirely lacking a data dictionary to decipher the codes.

**May 8, 2026:** Defense Counsel served Plaintiff with a Notice of Deposition (Exhibit V) and a meet-and-confer notice (Exhibit W); however, the notice only listed individual item numbers and refused to provide an actual list of disputed questions.

**May 11, 2026:** Plaintiff served a comprehensive 9-point written Deficiency Notice (Exhibit X) documenting Defendant's illegal 60-day temporal limitation window, false claims of "compound questions," boilerplate objections, and blank placeholder templates. Plaintiff enforced the "substantive component" of the meet-and-confer requirement accountable to Local Rule CV-7(h), listed his questions out so the Defense could research them, and agreed confer on May 14.

3

**May 13, 2026:** Defense Counsel explicitly refused to provide a reciprocal itemized list of deficiencies regarding Plaintiff's responses, seeking to force an unrecorded verbal ambush. Plaintiff enforced the rules and Defendant unilaterally canceled the planned meet-and-confer, rescheduling for the following week and supplied the listed questions the following Monday.

**May 20, 2026 (The Unrecorded Deposition):** To satisfy Local Rule CV-7(i), Plaintiff submitted to a partitioned Zoom conference. Rather than conferring in good faith regarding discovery disputes, Defense Counsel converted the session into a hostile, **two-hour unrecorded deposition**, micro-filibustering the clock to prevent any meaningful discussion of Plaintiff's 9-point database agenda. During this session, Defense Counsel repeatedly demanded tax summaries, medical records, bank statements, and employment verification. This harassment was conducted despite Defense Counsel having been served with Initial Disclosures in early April explicitly limiting emotional damages to "garden variety" emotional distress. Furthermore, in discovery responses received by the defense on or about April 23 (Exhibit J, Pages 11 and 13), Plaintiff clearly stated the financial damages were based strictly on a foregone credit opportunity, explicitly disclaiming any claim for business losses.

Ignoring these documented boundaries, Defense Counsel continually demanded protected opinion work product and attempted to justify Defendant's discovery deficiencies. When pressed on the production of the backend data, Defense Counsel argued that TransUnion should not have to supply the requested production because Plaintiff "cannot read the codes." Plaintiff firmly rebuffed this argument, stating that pursuant to the protective order in place, Plaintiff maintains the right to retain an expert to review and translate the codes. Despite the fact that Defendant had furnished outdated front-end data and no data dictionary, Defense Counsel immediately demanded the identity of Plaintiff's prospective expert witness.

When Plaintiff brought his violations to their attention (Found in Part III), Defense Counsel mocked Plaintiff and evasively refused any adjustment. Due to Defense's obstructions, only 50% of the questions were addressed, and Defense demanded another two-hour meet-and-confer the next day.

**May 20, 2026 (5:19 PM):** Operating with complete good faith under FRCP 26(e), Plaintiff realized certain discrepancies immediately in His Discovery after Defendant supplied their specific list of questions on Monday. Just hours after the meet-and-confer concluded, Plaintiff finalized and served formal First Supplemental Responses, removing conditional language flagged by the defense and effectively mooting their entire deficiency claim, and supplied his Second Amended Initial Disclosures (Exhibit U)

**May 21, 2026 (11:00 AM):** The parties convened for a second meet-and-confer. Because Plaintiff had proactively served his First Supplemental Responses, Defendant's agenda was moot. Plaintiff instructed Defense Counsel to review the updated responses and then attempted to advance his own outstanding discovery disputes. Defense Counsel refused to supply new questions and continued to rehash old questions. When Plaintiff refused to endure another two-hour marathon session and asked if the defense was formally refusing to answer his pending questions, Defense Counsel attempted to intimidate Plaintiff by repeatedly threatening to call the Court's Discovery Hotline. Faced with an immediate discovery impasse, the parties contacted the Court's Discovery Hotline. Magistrate Judge Hawthorn's chambers issued an explicit mandate requiring both parties to transmit pre-conferral discovery briefs by Tuesday, May 26, at noon, scheduled a formal court-supervised hearing for Wednesday, May 27, at 2:00 PM, and strongly suggested the parties settle before the meeting.

5

**May 21 – May 25, 2026:** To honor the Court's directive, Plaintiff initiated good-faith settlement efforts on the evening of May 21 and formally requested defense counsel's specific discovery questions the next day. Plaintiff timely served his own questions on May 22. Defense Counsel withheld their questions over the Memorial Day weekend, delaying until Monday, May 25, a mere 46 hours before the Court's scheduled hearing, to finally serve their questions, raise new complaints, and request a meet-and-confer on less than 18 hours' notice. Plaintiff promptly addressed the new complaints (Exhibit I) but informed counsel he was unavailable for a conferral on such unreasonable notice. Defence offered to reschedule meeting for following week. Plaintiff offered to extend to the following day; Defendant refused. Fulfilling the Court's strict deadline, both parties transmitted their Master Discovery Packets to Law Clerk Mr. Shanker (Exhibit Y).

**May 26, 2026:** With Defendant's restrictive discovery responses pending immediate review in chambers, Defense Counsel executed an abrupt tactical shift by extending a settlement proposal. Viewing the email on a mobile phone and unable to see the attached PDF, Plaintiff conditionally accepted the four core terms in the email body, **explicitly stating acceptance was contingent upon a personal review of the physical contract** (Exhibit DD Pages 1 and 2). Armed solely with this conditional email, Defense Counsel sent an after-hours request to Law Clerk Charlie Shanker at 5:03 PM to vacate the court-supervised discovery conference before Plaintiff ever opened the document.

**May 27, 2026:** Upon reviewing the PDF at home (Exhibit GG), Plaintiff discovered an immediate bait-and-switch: the draft contained unnegotiated liability shields designed to override 15 U.S.C. § 1681i and entirely omitted "Exhibit A," rendering the document legally unenforceable and void. At 7:59 a.m., Plaintiff formally rejected the defective PDF in writing,

6

detailing necessary corrections (Exhibit Z Pages 4 and 5). Despite receiving this explicit rejection and knowing the agreement was actively disputed, Defense Counsel contacted the clerk again that morning to secure confirmation of the cancellation, actively deceiving the Court. Counsel then transmitted a second, unilaterally altered contract (Exhibit CC). By adding a proper Exhibit A and the requested carve-out, Counsel legally nullified his first draft, yet he retained the unnegotiated corporate shields. When Plaintiff refused to sign a manipulated agreement containing extra-contractual terms he never accepted, Defense Counsel threatened an enforcement motion (Exhibit Z Page 3)

**May 28, 2026:** Plaintiff utilized Defense Counsel's own structural blueprints to draft a conforming settlement agreement, retaining all customary mutual protections but surgically removing the unnegotiated modifications that contravened the accepted May 26 terms. Plaintiff then formally executed this conforming contract, attached a signed W-9 tax form (Exhibit AA), and transmitted the fully executable package to Defense Counsel, placing the burden of consummating the agreed-upon settlement squarely on the Defendant.

**June 3, 2026:** Plaintiff requested a final resolution update by June 4 at 4:00 p.m., reiterating that Defendant's initial draft was null, void, and unenforceable due to unilateral alterations and the complete omission of the primary exhibit. In response, Defense Counsel aggressively threatened to file a motion to enforce, stay discovery, and seek attorney's fees unless Plaintiff signed the defective agreement. Attempting to fabricate a binding contract and trick Plaintiff into compliance, Counsel quoted only half of Plaintiff's May 26 email, intentionally suppressing the explicit sentences where Plaintiff reserved the right to review the physical document before signing the formal agreement. Defense Counsel attempted to coerce Plaintiff into signing an

unenforceable contract containing extra-contractual corporate policies that Plaintiff never agreed to and had explicitly refused to sign (Exhibit KK).

## III. MOTION TO COMPEL CURATION OF NON-COMPLIANT DISCOVERY RESPONSES

### A. Defendant's Unilateral 60-Day Search Scope Reduction Violates FRCP 26 and 34

In Section I, Interrogatory Objection No. 4, and RFP Objection No. 3, TransUnion textually asserted a self-imposed temporal restriction (Exhibit B):

*"Trans Union has limited its search and responses to information during the relevant time period of June 18, 2025, to the date of the filing of this lawsuit... requiring Trans Union to search for... information back to January 1, 2020, would impose undue burden and costs."*

This restriction was explicitly incorporated into nineteen independent discovery responses. Under FRCP 26(b)(1) and 34, a responding party cannot act as the final arbiter of its own objections by unilaterally altering the boundaries of a request. If Defendant believed searching records back to January 1, 2020, constituted an undue burden, the mandatory mechanism under FRCP 26(c)(1) was to move the Court for a Protective Order. Unilaterally truncating a multi-year historical request down to 60 days without judicial authorization is a facial violation of the rules.

Furthermore, this truncation prejudices Plaintiff's ability to prove his case. Plaintiff has alleged Willful Noncompliance under 15 U.S.C. § 1681n. Under *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), a plaintiff must demonstrate that a credit bureau acted in "reckless disregard" of the law. To establish this state of mind before a jury, Plaintiff must prove TransUnion possessed historical notice from 2020 through 2025 that its automated formatting templates were generating incomplete disclosures, yet failed to take corrective action.

Additionally, this historical data is essential to calculating compensatory damages. Credit scoring models dictate that Payment History comprises 35% of a consumer's score. TransUnion's

8

automated templates systemically truncate month-by-month payment histories, replacing vital financial data with blank dashes ("---"). For a direct, demonstrative example of this data-stripping practice, the Court need only review Exhibit F (Pages 52 through 56), where the fields for Balance, Past Due, Amount Paid, and Remarks have been entirely wiped across multiple years. As established by Exhibit G, Defendant completely failed to correct these disputed omissions upon reinvestigation, directly violating 15 U.S.C. § 1681i. By artificially suppressing this historical data, TransUnion depressed Plaintiff's credit rating below its mathematical potential. Plaintiff requires a complete, unredacted search dating back to January 1, 2020.

**B. Defendant's Evasive Rule 33(d) Document Dumps and Improper Subpart Objections**

In Interrogatories 1 through 7, (Exhibit B) Plaintiff requested technical narrative information concerning the data systems and templates used to generate file disclosures. Defendant completely refused to provide narrative text, instead executing a boilerplate invocation of FRCP 33(d) by referring to document production TU 1–TU 65. These documents consist entirely of Plaintiff's personal end-user credit report printouts. It is logically impossible to derive internal back-end database queries or source code from a consumer printout. Under FRCP 37(a)(4), this evasive answer must be treated as a total failure to respond.

Defendant further refused to answer fifteen core interrogatories (Exhibit B) (Nos. 10–20, and 22–25) by claiming Plaintiff's introductory definitions split the discovery set into discrete subparts exceeding the limit of Rule 33(a)(1), and refused RFAs 11 and 17 as "compound." Federal courts in the Fifth Circuit utilize the "related question" or "common theme" test to count subparts (*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014)). Because each inquiry propounded by Plaintiff addresses a specific, integrated component of TransUnion's statutory

9

file-disclosure operations in pursuit of a single theme, they constitute single interrogatories and proper requests for admission. Defendant's objections are legally unsupportable.

## C. Defendant's Structural Suppression of Native Electronically Stored Information (ESI)

In RFPs 4 and 23, (Exhibit B) Plaintiff requested raw data extracts, native Metro 2 data strings, and Automated Consumer Dispute Verification (ACDV) logs. Defendant merely pointed to fragmented front-end Graphical User Interface (GUI) "Print Images" (TU 3). The physical document Defendant purports to be the internal CRS3 file is effectively a title page without a book, consisting merely of an introduction while entirely omitting the substantive consumer tradelines themselves.

FRCP 34(b)(2)(E)(ii) mandates that a party produce ESI in the form in which it is ordinarily maintained. TransUnion's production mathematically proves that the delivered PDFs are an edited, incomplete summary rather than native data:

1.  Document TU 3 explicitly admits it is merely a "Print Image conversion" from TransUnion's proprietary CRS3 application.

2.  Pages TU 34–35 and TU 57–58 display front-end null data fields formatted as "$000000000.00" which do not exist in raw relational SQL databases.

3.  Pages TU 5–12 physically contain formatting asterisks masking Plaintiff's account numbers, whereas TransUnion's own confidential corporate memo (Document TU 69) explicitly admits that account numbers are never masked or truncated within its internal CRS3 database architecture.

Beyond the suppression of the raw data strings, Defendant has entirely withheld the technical documentation, database schemas, and source code algorithms demanded in RFPs 1, 2, and 24. Under FRCP 34, a corporation cannot produce a redacted, masked PDF when an unredacted,

10

native database export exists. Plaintiff demands immediate delivery of the actual unmasked CRS3 database exports, raw Metro 2 strings, and raw ACDV logs.

**D. Defendant's Curation of Blank Fields, Personnel Names, and Historical Records**

In its certified response to RFP 13 (Exhibit B), TransUnion served a final discovery response containing blank template placeholders ("labeled TU __–TU __"), providing objective proof that Defendant failed to conduct a "reasonable inquiry" under FRCP 26(g). In RFP 6, requesting the names of corporate employees who processed his file, Defendant provided only an automated server tag ("CRS9REQF"). A machine code cannot be deposed; Plaintiff is entitled to the names of the human agents involved.

In RFPs 8 and 11 (Exhibit B), Defendant responded to requests for historical complaints by circularly referencing Plaintiff's Complaint. Defendant further objected that Interrogatory 12 regarding related litigation was shielded as confidential "CFPB supervisory material." Public federal lawsuits are matters of public record stored on public dockets and cannot be suppressed under the guise of an administrative privilege.

**IV. MOTION TO DEEM REQUESTS FOR ADMISSION ADMITTED**

Plaintiff respectfully moves the Court under FRCP 36(a)(6) and 37(a)(4) to strike TransUnion's contradictory, evasive answers and enter an order deeming the facts admitted:

1. **Abuse of FRCP 36(a)(4) ("Sham Ignorance"):** In RFAs 5, 6, and 8, Defendant claimed that after making a "reasonable inquiry," it lacked sufficient information to admit or deny whether it maintains full account numbers in its master database, whether it sells them to third parties, and how its proprietary software templates operate. A multi-billion-dollar credit bureau cannot claim ignorance of its own core database architecture to evade an admission.

11

2. **Direct Factual Contradiction:** In RFAs 3, 4, 7, 17, 18, 22, and 23, TransUnion swore under oath that it does not intentionally truncate account numbers as standard operating procedure. These sworn denials are objectively false. Interrogatory No. 6 explicitly admits to this truncation practice; Internal Corporate Memos (TU 68 and TU 69) mandate data masking; and Physical Report Prints (TU 5–11) physically display the truncation asterisks.

3. **Mutually Exclusive Sworn Positions:** In RFA 20, Defendant issued a definitive factual denial that it sells full data strings to third parties. Yet, in RFA 6, Defendant swore under oath that it lacked sufficient information to even know what data it furnishes to third parties.

Because Defendant's responses show flagrant factual contradictions to construct a false record, they must be treated as a total failure to respond under FRCP 37(a)(4). Plaintiff requests that the Court order that RFAs 3, 4, 5, 6, 7, 8, 17, 18, 20, 22, and 23 be deemed ADMITTED.

## V. MOTION FOR A PROTECTIVE ORDER REGULATING DEPOSITION SEQUENCING

Pursuant to FRCP 26(c)(1), Plaintiff incorporates by reference his concurrently filed Motion for a Protective Order. Plaintiff requests the Court stay his oral deposition until a final resolution of this Omnibus Motion, and at least 30 days after TransUnion fully cures its discovery deficiencies.

Under the "Sword and Shield" doctrine, TransUnion cannot weaponize a deposition notice while unlawfully withholding unredacted CRS3 files and native Metro 2 data. Because Defendant has erroneously prevented discovery while demanding an immediate deposition, Plaintiff is left with little information to prepare; complete document production must precede oral examination.

Furthermore, Defendant's conduct during the May 20 conferral necessitates a stay. Counsel executed an oppressive interrogation demanding medical records and tax returns, completely ignoring Plaintiff's formal disclaimers of economic and business losses, and his strict limitation to a foregone credit opportunity and ordinary, "garden-variety" emotional distress *(See Natural Gas Pipeline Co. v. Energy Gathering, Inc., 2 F.3d 1397 (5th Cir. 1993); Merrill v. Waffle House, Inc., 227 F.R.D. 467 (N.D. Tex. 2005))*. Egregiously, counsel also unlawfully conditioned ESI production on Plaintiff surrendering his non-testifying consultant's identity in violation of FRCP 26(b)(4)(D).

## VI. BASIS FOR MANDATORY CIVIL SANCTIONS REGARDING BAD-FAITH DOCKET MANIPULATION

The federal courts possess the inherent authority and explicit power under FRCP 37(b) to punish any litigant or officer of the court who practices gamesmanship or misleads court personnel to subvert judicial deadlines.

The email record exposes a premeditated act of docket manipulation. Faced with Judge Hawthorn's strict mandate for a May 27 hearing, Defendant executed a tactical bait-and-switch. On May 26, Defense Counsel emailed a settlement proposal with an attached PDF. Viewing the email on a smartphone, Plaintiff could not see the attachment and agreed *in principle* strictly to the four terms outlined in the email body (Exhibit Z Pages 7 and 8). Defendant immediately utilized this conditional representation to successfully induce the cancellation of the hearing. Upon reviewing the PDF at home, Plaintiff discovered it subverted the email terms, added unnegotiated liability shields, and omitted 'Exhibit A,' rendering it legally unenforceable. On May 27, Plaintiff formally rejected the defective document. Counsel then transmitted an amended contract (Exhibit CC) legally nullifying the May 26 draft, yet retained the extra-

13

contractual terms. Counsel now threatens an enforcement motion based on the ineffectual May 26 draft with additions not agreed upon to coerce Plaintiff into signing the altered May 27 agreement. Furthermore, Defense Counsel is currently weaponizing a 30-hour ultimatum, demanding a live conferral and coercing Plaintiff to sign the altered, legally nullified contract under threat of motion practice. To fabricate grounds for enforcement, Counsel deceptively quoted only half of Plaintiff's May 26 email (Exhibit KK), intentionally suppressing the explicit condition reserving the right to review the physical document before finalizing any agreement. Using a conditional 'agreement in principle' strictly to mislead a federal clerk and vacate a hearing, and now deploying doctored quotes to enforce an ineffectual draft, is a severe, sanctionable abuse of the judicial system. This egregious paper trail demands a formal finding of bad-faith misconduct to protect the record..

## VII. RELIEF SOUGHT

Plaintiff Robert Stafford respectfully requests that the Court enter an Order:

1. **OVERRULING** Defendant TransUnion LLC's boilerplate objections and self-imposed 60-day temporal restrictions across all discovery sets;

2. **RESTORING** the temporal scope of discovery to the requested baseline of January 1, 2020, through the present, and compelling TransUnion to conduct a diligent search across this full timeline;

3. **COMPELLING** Defendant TransUnion to produce, within fourteen (14) days, all requested documents and data sought in Plaintiff's First Set of Requests for Production, including the actual, unmasked CRS3 database extracts, native Metro 2 data strings, and Automated Consumer Dispute Verification (ACDV) logs in their ordinarily maintained electronic formats under the protections of the Confidentiality Order;

14

4. **COMPELLING** Defendant TransUnion to provide complete, non-evasive, sworn written narrative answers to Interrogatories 1 through 7, 10 through 20, and 22 through 25 within fourteen (14) days;

5. **STRIKING** Defendant TransUnion's evasive, contradictory denials and ordering that Requests for Admission 3, 4, 5, 6, 7, 8, 17, 18, 20, 22, and 23 be deemed ADMITTED for all purposes in this action;

6. **COMPELLING** Defendant TransUnion to cure the blank template placeholders in RFP 13, identify the human personnel associated with automated server tag "CRS9REQF" under RFP 6, and produce unredacted third-party historical consumer complaint logs and public civil dockets free from meritless CFPB administrative privilege objections;

7. **ISSUING** an FRCP 26(c) Protective Order staying and postponing Plaintiff's obligations to respond to Defendant's pending discovery requests and oral deposition until Defendant has fully complied with the Court's order compelling production;

8. **IMPOSING** sanctions against Defendant and defense counsel pursuant to FRCP 37 and the Court's inherent authority for the bad-faith use of a phantom settlement to vacate the Court's May 27th mandatory discovery conference; and

9. **AWARDING** Plaintiff any reasonable costs incurred in bringing this motion, along with any such other and further relief as the Court deems just and proper.

Dated: June 4, 2026

Respectfully submitted,

**Robert Stafford,**

**Plaintiff Pro Se**

6613 Rutherford Rd.

Plano, Texas 75023

Phone: (214) 499-0279

Email: robert@aceharvest.org

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE CV-7(i)

Pursuant to Local Rule CV-7(i)(2), Plaintiff certifies that the parties have reached a final impasse and further verbal conferral is a procedural impossibility due to Defendant's bad-faith and unreasonable failure to meet and confer. On May 21, 2026, this Court ordered a court-supervised conference for May 27, 2026. Defendant utilized a midnight settlement representation on May 26 to successfully induce the cancellation of that hearing. The moment judicial oversight was removed from the calendar, Defendant immediately weaponized the pause by demanding Plaintiff sign an altered contract containing a completely blank 'Exhibit A' and unnegotiated liability waivers under threat of a motion. Because Defendant utilized the settlement process as an instrument of docket manipulation to evade judicial review of its non-compliant discovery responses, this motion is heavily opposed and requires the immediate intervention of the Court.

**Robert Stafford,**

**Plaintiff Pro Se**

16

**CERTIFICATE OF SERVICE** I hereby certify that on this 5th day of June 2026, a true and correct copy of the foregoing document was served via electronic mail upon the following counsel of record:

Paul L. Myers pmyers@qslwm.com Quilling, Selander, Lownds, Winslett & Moser, P.C. 5801 Tennyson Parkway, Suite 440 Plano, Texas 75024 Counsel for Defendant TransUnion LLC

Jennifer R. Brooks jrbrooks@seyfarth.com Seyfarth Shaw LLP 2323 Ross Avenue, Suite 1660 Dallas, TX 75201 Counsel for Defendant Equifax Information Services LLC


**Robert Stafford,**

**Plaintiff Pro Se**


# Table of Exhibits

**Exhibit B**
Defendant Trans Union LLC's Non-Compliant Discovery Responses and Certified Disclosures.

**Exhibit BB**
Written Email Negotiations and Settlement Adjustments Transmitted to Defense Counsel.

**Exhibit DD**
Written Email Exchange Confirming Plaintiff's Non-Binding Conditional Agreement in Principle until Plaintiff fully read the entire contract.

**Exhibit F**

Proprietary Front-End TransUnion Consumer Credit File Disclosure Highlighting Widespread Data-Stripping and Systemic Blank Fields ("---").

**Exhibit GG**
Defendant's Unenforcable Initial Settlement Draft Containing Unnegotiated Corporate Waivers and an Entirely Omitted "Exhibit A".

**Exhibit I**
Plaintiff's Second Supplemental Responses to Defendant Trans Union's First Set of Interrogatories Curing Phrasing Objections.

**Exhibit KK**
Written Email Exchange Dated June 3, 2026, Documenting Defense Counsel's Coercive Ultimatum and Enforcement Threats.

**Exhibit MM**
Electronic Mail Transmission Log Verifying Faultless Delivery of Plaintiff's Master Discovery Sets on March 30, 2026.

**Exhibit U**
Plaintiff's Second Amended Initial Disclosures Formally Stipulating to and Limiting Damages Claims.

**Exhibit V**
Defendant Trans Union LLC's Notice of Oral Deposition of Plaintiff Robert Stafford Set for June 24, 2026.

**Exhibit W**
Defense Counsel's May 8, 2026 Letter Improperly Refusing to Detail Deficiencies or List Outstanding Disputed Items.

**Exhibit X**
Comprehensive 9-Point Written Deficiency Notice Served by Plaintiff to Initiate the Local Rule CV-7(h) Process.

**Exhibit Y**
Plaintiff's Pre-Conferral Master Discovery Packet and Brief Transmitted to Law Clerk Charlie Shanker on May 26, 2026.