**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| ROBERT STAFFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 4:25-cv-00921-JDK-JDL |
| TRANS UNION, LLC, and EQUIFAX | § | |
| INFORMATION SERVICES LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**DEFENDANT TRANS UNION LLC'S MOTION TO ENFORCE
THE PARTIES' SETTLEMENT AGREEMENT**

COMES NOW, Trans Union LLC ("Trans Union") one of the Defendants in the above-referenced matter and files its Motion to Enforce the Parties' Settlement Agreement (the "Motion"), and would respectfully show the court as follows[1]:

### I.   SUMMARY

On May 26, 2026, pro se Plaintiff Robert Stafford ("Plaintiff")[2] and Trans Union (collectively, the "Parties") agreed in writing to a settlement of Plaintiff's claims against Trans Union, including, among other agreed terms, to dismiss Plaintiff's claims with prejudice. However, Plaintiff has continually refused to sign the settlement agreement containing the agreed upon terms and demands that additional terms be included therein and that other terms be removed. Trans Union seeks an order from the Court compelling Plaintiff to sign the Parties' written settlement agreement and to dismiss Plaintiff's claims against Trans Union with prejudice.

---

[1]This Motion is supported by the Declaration of Paul Myers, counsel for Trans Union, attached as Exhibit 1 ("Myers Decl.").

[2] While Plaintiff likes to hide behind his *pro se* status, the Fifth Circuit has made it clear that pro se litigants must abide by the rules that govern the Federal courts. *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014), *as revised* (Sept. 18, 2014). Further, a simple Collin County, Texas civil case search reveals that Plaintiff has represented himself in 26 cases, mostly as a plaintiff, even before his recent foray into federal court. *See* Ex. 2.

1

7630782.1

## II.    FACTUAL BACKGROUND

Plaintiff filed his Complaint on August 22, 2025, against Trans Union and Equifax Information Services, LLC asserting claims under the Fair Credit Reporting Act ("FCRA"), alleging that Trans Union omitted full account numbers in his credit file disclosure and that account information and payment history was missing. *See* Plaintiff's Amended Complaint, ECF No. 1, at ¶ 13.

Through a series of written communications, the Parties reached a binding agreement to settle Plaintiff's claims against Trans Union on May 26, 2026. The chronology contained in the Declaration of Paul Myers, sets forth in detail how the agreement was reached:

a. On May 4, 2026, at 4:36 PM, I emailed Plaintiff extending Trans Union's settlement offer of $1,000, plus deletion of the accounts referenced in the Complaint from Plaintiff's credit file, ***expressly conditioned*** on Plaintiff's signing the Confidential Settlement and Release Agreement ("Settlement Agreement") in the form ***attached thereto***. In my email to Plaintiff, I explained how the blanks in the Settlement Agreement would be filled in with the accounts referenced in the Complaint and the date of the updated credit file disclosure. **Ex. 1, at ¶ 3.a., Ex. 1-A**.

b. On May 4, 2026, at, 7:53 PM, Plaintiff sent an email rejecting Trans Union's settlement offer. **Ex. 1, at ¶ 3.b., Ex. 1-B**.

c. On May 21, 2026, at 1:21 PM, following a call to the Discovery Hotline during which Magistrate Judge Hawthorn encouraged the parties to explore settlement, Plaintiff sent an email making a settlement demand of $75,000, plus deletion of the disputed accounts, confidentiality, and dismissal upon clearance of the settlement proceeds. **Ex. 1, at ¶ 3.c., Ex. 1-C**.

d. On May 25, 2026, at 9:08 AM, Trans Union made a settlement offer of $2,500, plus deletion of the accounts referenced in the Complaint from Plaintiff's credit file, ***expressly conditioned*** on Plaintiff's signing the Settlement Agreement in the form ***attached thereto***. The form of Settlement Agreement attached thereto was the same as the version provided on May 4, 2026. In my email to Plaintiff, I explained how the blanks in the Settlement Agreement would be filled in. **Ex. 1, at ¶ 3.d., Ex. 1-D**.

e. On May 25, 2026, at 10:51 AM, but Plaintiff lowered his demand to $10,000, plus deletion of the disputed accounts, production of Metro 2 data by Trans Union, and an express carveout preserving Plaintiff's right to litigate against co-defendants and data furnishers. **Ex. 1, at ¶ 3.e., Ex. 1-E**.

2

f.  On May 26 2026, at 2:06 PM, Trans Union made a settlement offer of $4,000, plus deletion of the accounts referenced in the Complaint from Plaintiff's credit file, that was ***expressly conditioned*** on Plaintiff's signing the Settlement Agreement in the form ***attached thereto***. The form of Settlement Agreement attached thereto was the same as the version provided on May 4 and 25, 2026. In my email to Plaintiff, I explained how the blanks in the Settlement Agreement would be filled in. I also explained that Trans Union was willing to add a carveout preserving Plaintiff's right to litigate against co-defendants and data furnishers, and that, without waiving any objections, Trans Union will respond to a third-party subpoena regarding Metro 2 data after dismissal. **Ex. 1, at ¶ 3.f., Ex. 1-F**.

g.  On May 26, 2026, at 3:46 PM, Plaintiff emailed explaining that he had ***"gone over [my] proposal"*** and was writing ***"to formally confirm [his] acceptance of Trans Union's settlement offer as explicitly outlined in [my] email."*** Plaintiff also stated that he wanted the settlement proceeds within 15 days of signing and wanted to make sure that the Settlement Agreement did not restrict his ability to pursue claims against co-defendants and data furnishers. There were no other concerns expressed by Plaintiff about Trans Union's offer or the form of Settlement Agreement that was provided. **Ex. 3, at ¶ 1.g., Ex. 1-G** (emphasis added).

h.  On May 26, 2026, at 4:09 PM, I emailed Plaintiff explaining that a 15 day deadline on payment of the settlement proceeds could not be an express term of the Settlement Agreement. **Ex. 1, at ¶ 3.h., Ex. 1-H**.

i.  On May 26, 2026, at 4:41 PM, Plaintiff emailed reaffirming his acceptance of Trans Union's settlement offer and conceding on the 15 day payment deadline and asking that a revised Settlement Agreement be sent so that he could ***"ensure that the data furnisher carveouts and third-party subpoena language are precisely aligned with our agreement."*** There were no other concerns expressed by Plaintiff about Trans Union's offer or the draft Settlement Agreement that was provided. Plaintiff also agreed that I could communicate to Magistrate Judge Hawthorn's Law Clerk, Mr. Shanker, that Plaintiff and Trans Union ***"reached an agreement in principle."*** **Ex. 1, at ¶ 3.i., Ex. 1-I** (emphasis added).

j.  On May 26, at 5:17 PM, I emailed Plaintiff with a revised version of the Settlement Agreement that contain the $4,000 agreed-upon settlement amount, the additional language he requested regarding the carveout preserving Plaintiff's right to litigate against co-defendants and data furnishers, and the list of specific accounts to be deleted from Plaintiff's credit file. **Ex. 1, at ¶ 3.j., Ex. 1-J**.

k.  On May 27, 2026, at 8:00 AM, Plaintiff emailed reaffirming his prior acceptance, but objecting for the first time to what he referred to as ***"several standard defense placeholders that directly contradict our negotiated terms."*** Plaintiff raised eight concerns, four of which were materially different than the terms of the settlement that had been reached. **Ex. 1, at ¶ 3.k., Ex. 1-K** (emphasis added).

l.  On May 27, 2026, at 2:07 PM, I emailed Plaintiff explaining that a settlement had been

3

reached between Plaintiff and Trans Union and that, *"[i]f necessary, Trans Union will seek to enforce the binding agreement that was reached yesterday via email."* I explained that I made the four nonmaterial changes to the Settlement Agreement outlined in his email. I also filled in the date of Plaintiff's updated credit file disclosure and attached the disclosure as Exhibit A to the Settlement Agreement showing that Trans Union had deleted the accounts referenced in the Complaint from Plaintiff's credit file. I asked Plaintiff to sign and return the Settlement Agreement along with his W-9. **Ex. 1, at ¶ 3.l., Ex. 1-L** (emphasis added).

m. On May 27, 2026, at 4:11 PM, Plaintiff emailed refusing to sign the Settlement Agreement for a second time. **Ex. 1, at ¶ 3.m., Ex. 1-M**.

n. On May 28, 2026, at 9:45 AM, I emailed Plaintiff explaining that if he was having trouble downloading the encrypted document he needed to use the Mimecast link to do so. **Ex. 1, at ¶ 3.n., Ex. 1-N**.

o. On May 28, 2026, at 10:42 AM, Plaintiff emailed saying that the Mimecast link produced a blank white screen. **Ex. 1, at ¶ 3.o., Ex. 1-O**.

p. On May 28, 2026, at 11:22 AM, I emailed Plaintiff providing a second copy of the Settlement Agreement in encrypted PDF form because he was reportedly having difficulty opening it from the Mimecast secure link. **Ex. 1, at ¶ 3.p, Ex. 1-P**. I immediately emailed Plaintiff providing the password to open the encrypted PDF. **Ex. 1, at ¶ 3.p., Ex. 1-Q**.

q. On May 29, 2026, Plaintiff emailed sending a *significantly revised* settlement agreement that he had unilaterally drafted and signed, along with his W-9. **Ex. 1, at ¶ 3.q., Ex. 1-R.**

r. On June 3, 2026, at 12:48 PM, I emailed Plaintiff reiterating Trans Union's position that an agreement was reached when he accepted Trans Union's terms via email on May 26, 2026. I explained that to the extent Plaintiff's new issues were not inconsistent with the terms he accepted, I incorporated them into the Settlement Agreement. I demanded that Plaintiff sign and return the Settlement Agreement by 5:00 PM on June 4, 2026, or that he be available for a meet and confer conference on June 5, 2026, regarding Trans Union's anticipated motion to enforce, motion to stay discovery, and request for attorney's fees. **Ex. 1, at ¶ 3.s., Ex. 1-S**.

s. On June 4, 2026, at 4:43 PM, Plaintiff emailed stating that he refused to sign the Settlement Agreement and that he was only available to meet and confer at 7:45 AM on June 5, 2026. **Ex. 1, at ¶ 3.s., Ex. 1-T**.

However, in spite of multiple requests by Trans Union, Plaintiff has refused to consummate the settlement by signing the Settlement Agreement.

### III.    ARGUMENT & AUTHORITIES

**A.    The Parties' Settlement Should be Enforced and Plaintiff's Claims Should be Dismissed with Prejudice**

Despite Plaintiff's unequivocal agreement to settle and dismiss his claims against Trans Union with prejudice, his continued refusal to sign the Settlement Agreement and his later demands to change the terms of the Settlement Agreement have prevented the settlement from being consummated and this case from being dismissed with prejudice, thus causing significant delay and unnecessary waste of the Parties' and the Court's time and resources. If the Settlement Agreement is not executed and the case dismissed, the Parties will very likely continue to waste additional time and resources in litigation. Trans Union moves the Court to enforce the Parties' settlement by compelling Plaintiff to sign the Settlement Agreement and to dismiss Plaintiff's claims with prejudice.

Plaintiff's dubious suggestion that he did not read the form of Settlement Agreement he received on three separate occasions from counsel for Trans Union does not provide a defense. Under Texas law, a contract may incorporate an unsigned document by reference "provided the document signed by the defendant plainly refers to another writing." *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020) (*quoting Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968)). "A party who signs an agreement is presumed to know its contents. That includes documents specifically incorporated by reference." *Id.* at 204 (*quoting In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008)). "[W]here a contract expressly refers to another document, 'that other document ... is to be interpreted as part of the contract" *Gilliam v. Glob. Leak Detection U.S.A., Inc.*, 141 F. Supp. 2d 734, 738 (S.D. Tex. 2001) (quoting *Cook Chocolate Co. v. Salomon Inc.,* 684 F.Supp. 1177, 1182 (S.D.N.Y.1988)).

7630782.1

**B.      Trans Union is Entitled to Enforce the Settlement Reached**

The Fifth Circuit authorizes its district courts to summarily enforce agreements to settle cases pending before it. *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) ("We have long recognized a district court's inherent power to recognize, encourage, and when necessary enforce parties' settlement agreements");  *see also Bell v. Schexnayder,* 36 F.3d 447, 449 (5th Cir. 1994); *Cia Anon Venezolana De Navegacion v. Harris,* 374 F. 2d 33 (5th Cir. 1967). "Compromises of disputed claims are favored by the courts." *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391 (5th Cir. 1984). Thus, "[a] settlement agreement, once entered into, cannot be repudiated by either party and will be summarily enforced." *United States v. City of New Orleans,* 731 F.3d 434, 439 (5th Cir. 2013). "[A] federal court may incorporate a settlement agreement into a final judgment even if one party withdraws its consent before final approval." *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 530 (5th Cir. 1986).

"Under federal law, settlement agreements are contracts." *See Carter,* 2018 WL 1801663, at *4 (citing *Guidry v. Halliburton Geophysical Servs., Inc.,* 976 F.2d 938, 940 (5th Cir. 1992)). The validity and enforceability of a settlement agreement regarding federal claims are reviewed under federal law. *See Mid-South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 389 (5th Cir. 1984). Under federal law, a settlement agreement is binding "where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Moctezuma v. Islas,* No. 418CV00342ALMCAN, 2019 WL 8501013, at *2 (E.D. Tex. Dec. 28, 2019), *report and recommendation adopted in part, rejected in part*, No. 4:18-CV-342, 2020 WL 548681 (E.D. Tex. Feb. 4, 2020) (quoting *Lopez v. Kempthorne,* Civ. A. No. H-07-1534, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010). "A district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Weaver v. World Fin. Corp. of Tex.,* No.

6

7630782.1

3:09-cv-1124-G, 2010 WL 1904561, at *2 (N.D. Tex. May 12, 2010). Under federal law, "[w]here a party has knowingly and voluntarily agreed to settle his claims and no change of circumstances warrants repudiation of the agreement, the courts will enforce the settlement agreement." *Id.* (citing *Bell v. Schexnayder,* 36 F. 3d 447, 449 (5th Cir. 1994)).

The facts here support enforcement of the Settlement Agreement reached between the Parties. The Fifth Circuit has held "[o]ne who attacks a settlement must bear the burden of showing that the contract he made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Mid-South,* 733 F.2d at 391. There is simply no evidence the Settlement Agreement was a product of fraud or that it was somehow invalid. Instead, the Settlement Agreement was the result of arms-length negotiations and the facts demonstrate Plaintiff's decision to settle the case at hand. *See generally* Myers Decl. & Exs.

Further, the essential terms of settlement were incorporated into an enforceable Settlement Agreement. "[W]here the parties have agreed upon the monetary amount of the settlement payment and . . . the [plaintiff] will release specific claims[,]" the essential terms of a settlement agreement are generally present. *See In re Deepwater Horizon,* 786 F.3d 344, 357 n.26 (5th Cir. 2015). The Parties reached an enforceable settlement on the essential terms and more – including nonmonetary consideration. As such, the Parties' mutual assent is evidenced by the exchange of an offer and an acceptance of agreed upon terms through email correspondence. "[A]bsent a factual basis rendering it invalid, an [agreement] to settle a federal claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." *Fulgence v. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir. 1981).

Public policy also favors enforcement of the Parties' Settlement Agreement. *See, e.g., Broughton v. Livingston Indep. Sch. Dist.,* No. 9:08-CV-175, 2010 WL 4453763, at *15 (E.D. Tex.

7

7630782.1

Nov. 3, 2010). If the Settlement Agreement is not enforced, subsequent litigation will likely ensue, thereby resulting in further needless immeasurable waste of time and resources.

**C.**     **Trans Union is Entitled to its Attorneys' Fees Incurred in Filing this Motion**

Trans Union should be awarded its attorneys' fees incurred in attempting to enforce the Parties Settlement Agreement and the filing this Motion. Courts in this Circuit have awarded attorneys' fees to a party under the court's inherent authority for preparing a motion to enforce a settlement agreement. *See MG Herring Group Inc. v. John Vratsinas Commercial Builders, Inc.,* Nos. 3:09-CV-0455-L; 3:09-CV-1287-L, 2010 WL 1979393, at \*7 (N.D. Tex. May 18, 2010) (awarding attorneys' fees since the nonmovant "create[d] additional litigation that could have been avoided"). Plaintiff's well-documented refusal to honor the Parties' settlement has resulted in significant attorneys' fees and unnecessary waste of the Parties' and the Court's time. If Trans Union's Motion is granted, Trans Union requests 14 days leave to petition the Court for attorneys' fees incurred in attempting to enforce the Parties' Settlement Agreement and prosecution of this Motion, as well as any additional briefing or hearing that may be requested.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Trans Union respectfully requests this Court grant its Motion and enforce the Parties' Settlement Agreement pursuant to the agreed terms. Trans Union additionally requests an award of attorneys' fees related to its ongoing efforts to enforce the Settlement Agreement, in an amount to be later determined by the Court. Accordingly, Trans Union requests the Court enter an order compelling Plaintiff to sign the Parties' Settlement Agreement attached to the Declaration of Paul Myers as Exhibit 1-L and dismissing Plaintiff's claims against Trans Union with prejudice.

8

7630782.1

Respectfully submitted,


*/s/ Paul L. Myers*

Paul L. Myers
Texas Bar No. 14765100
pmyers@qslwm.com
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
Tennyson Parkway, Suite 440
Plano, Texas 75024
(214) 560-5452
Fax: (214) 871-2111

***Counsel for Trans Union LLC***

7630782.1

## CERTIFICATE OF CONFERENCE

A conference was held with Plaintiff pursuant to Local Rule 7(h) on June 5, 2026, the undersigned counsel conferred with Plaintiff on a Zoom videoconference regarding the merits of the foregoing Motion. Plaintiff did not agree to the relief requested in the foregoing Motion. Accordingly, the matter is submitted to the Court for determination.

*/s/ Paul Myers*
**Paul Myers**

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on the following party:

Robert Stafford
Robert@aceharvest.org
6613 Rutherford Rd.
Plano, TX 75063
(214) 499-0279
*Pro Se Plaintiff*

*/s/ Paul Myers*
**Paul Myers**

10

7630782.1