

FILED

JUN 1 5 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| ROBERT STAFFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:25-cv-00921-JDK-JDL |
| | § | |
| TRANS UNION, LLC, and EQUIFAX | § | |
| INFORMATION SERVICES LLC, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT TRANS UNION LLC'S 'EMERGENCY' MOTION TO STAY DISCOVERY

### I. PRELIMINARY STATEMENT & INTRODUCTION

Defendant Trans Union LLC's ("Trans Union") "Emergency" Motion to Stay Discovery (Docket 54) is a calculated exercise in severe litigation gamesmanship. It is not an response to a legitimate emergency; rather, it is a desperate tactical maneuver designed to prevent this Court from uncovering systemic discovery violations committed by Trans Union's counsel, Paul Myers.

The true purpose of this "Emergency" Motion is to permanently stall Plaintiff's pending **Omnibus Motion to Compel Discovery (ECF No. 50)**. Trans Union is fleeing an imminent investigation into its absolute failure to comply with the Federal Rules of Civil Procedure and controlling Fifth Circuit precedent. Specifically, Trans Union has systematically refused to provide substantive answers to Plaintiff's Interrogatories, completely stonewalled formal

1

Requests for Admission, and has attempted to unilaterally take a legitimate, six-year historical timeline request for production and interrogatories and artificially compress it down to a mere 60 days without ever seeking or obtaining a protective order from this Court. Furthermore, Defendant has continuously abused discovery procedures by employing weaponized, unanswerable compound questions in direct violation of Fifth Circuit restrictions.

To evade accountability, Defendant has constructed a fraudulent narrative claiming the parties reached a final, binding settlement. In truth, no "meeting of the minds" ever occurred. The parties reached a tentative agreement in principle on exactly four narrow items, which Plaintiff explicitly conditioned upon an inspection of a full written draft. Trans Union's counsel immediately weaponized this by engaging in a classic "bait-and-switch"—submitting unexecutable, boilerplate-heavy drafts packed with unagreed-to structural terms and missing critical exhibits.

When Plaintiff immediately caught the trick and documented his objections, Defendant's counsel waited until after 5:00 PM to bypass normal channels and email the Court Clerk to cancel a crucial Web appointment with Judge Hawthorne. This appointment was explicitly scheduled for Judge Hawthorne to view the severe deficiencies in Trans Union's discovery and mediate the impasse. Mr. Myers was desperate to escape that meeting because he knew the Judge would have serious issues with his unlawful discovery ploys. Trans Union now seeks to use an "Emergency Stay" to validate its bad-faith conduct and force an unconscionable, unagreed-to contract on a *pro se* litigant. Because this motion is a bad-faith ploy to manipulate the docket and escape discovery accountability, it must be denied.

## II. FACTUAL BACKGROUND

2

**A. The Conditional Nature of the Agreement and Mobile Screen Limitations**

On May 26, 2026, the parties negotiated via email regarding a highly limited settlement framework. Crucially, during these initial communications, Plaintiff was away from his home office and communicating via an iPhone, rendering heavy boilerplate attachment files completely unviewable.

To protect the integrity of the record, Plaintiff was explicitly clear that **no binding agreement existed** until a physical draft was thoroughly inspected. As recorded in Plaintiff's email (found within the record of ECF No. 50), Plaintiff explicitly stated to Mr. Myers:

*"I am agreeing in principle to these four terms, but no binding agreement is made or will be signed until I have had a full opportunity to view the entire draft text of the agreement. Please send over the document draft for my review."*

This statement establishes black-on-white that contract formation was strictly conditional. No final agreement could or would be formed while Plaintiff was trapped looking at an iPhone screen without a complete, legible document in front of him.

**B. Defendant's "Bait-and-Switch" and the Missing Exhibit A**

When Plaintiff returned to his home office and finally accessed the document on a proper monitor, the deception became clear. Defendant's draft contract was completely **non-executable**: it anchored its entire scope to a blank, unproduced "Exhibit A."

Furthermore, counsel had unilaterally "ad-libbed" extensive corporate protections, prospective waivers of future liability, an unagreed-to unilateral fee-shifting clause, and a 30-day statutory

3

immunity clause directly undermining the consumer protections of 15 U.S.C. § 1681i(a)(5). This draft did not match the four negotiated terms; it was an entirely new counter-offer.

## C. Immediate Rejection and Defendant's Strategic Sabotage of Court Oversight

The very next morning, at **7:59 AM,** Plaintiff transmitted an exhaustive rewrite and objection to Mr. Myers, flatly refusing to sign the unagreed-to structural terms and demanding that they be immediately removed.

Recognizing that his ambush had failed and that Plaintiff had formally documented the contract's defects, Mr. Myers engaged in a frantic act of damage control. After 8:00 AM, Mr. Myers emailed the Court Clerk to officially confirm the cancellation of the parties' upcoming Web appointment with Judge Hawthorne knowing the agreement was still in dispute.

This Web appointment was specifically ordered for Judge Hawthorne to provide judicial oversight, view the massive deficiencies in Trans Union's discovery, and mediate the ongoing meet-and-confer conflicts that Mr. Myers was intentionally creating through gamesmanship. Knowing that Judge Hawthorne would have severe issues with Trans Union's discovery tactics— including the artificial 60-day timeline compression and the deployment of restricted compound questions—Mr. Myers used the illusion of a "settlement" to panic-cancel the appointment and escape judicial scrutiny.

## D. The Present Procedural Posture

4

When Defendant subsequently issued a *second* revised form to cure his missing exhibits, he *again* refused to remove the unagreed-to corporate shields. By submitting a entirely new contract version, Defendant legally nullified his first draft. Plaintiff rejected both versions.

Plaintiff subsequently submitted a clean contract reflecting *only* the four terms originally discussed; Defendant refused to sign it. With the settlement talks exposed as an illusion, Plaintiff moved forward with his **Omnibus Motion to Compel (ECF No. 50)** to force answers to his outstanding discovery requests. In a frantic attempt to keep the Court from seeing its discovery misconduct, Trans Union filed its Motion to Enforce (Docket 53) followed immediately by this "Emergency" Stay (Docket 54).

### III. LAW & ARGUMENT

**A. Defendant's 10-Day Delay Exposes the "Emergency" as a Bad-Faith Fabrication**

Under the Local Rules of the Eastern District of Texas, an emergency designation is reserved for immediate, unavoidable crises. Trans Union's own paperwork destroys its credibility. According to the Certificate of Conference in Docket 54, Mr. Myers met and conferred with Plaintiff regarding this Stay on **June 5, 2026**. Yet, Defendant waited until **June 15, 2026**, to file this motion.

If facing standard discovery or Plaintiff's Motion to Compel constituted an actual emergency, Trans Union would have sought relief on June 5th. Hoarding an "emergency" motion for ten calendar days to deploy it as a tactical surprise on the day of a scheduled hearing is an abuse of federal procedure.

5

**B. The Stay is a Ploy to Escape Severe Violations of Civil Procedure and Avoid Answering Basic Discovery**

A stay of discovery is an extraordinary remedy that should be denied when it is used as a shield to hide total procedural non-compliance. Trans Union is facing an active Omnibus Motion to Compel (ECF No. 50) because it has systematically refused to participate in the discovery process in good faith.

Trans Union has refused to provide substantive, lawful answers to Plaintiff's Interrogatories and has completely stonewalled formal Requests for Admission. Furthermore, it has attempted to take a legitimate, six-year historical timeline request for production and interrogatories and artificially compress it down to a 60-day window. It did this unilaterally, without ever requesting or receiving a protective order from this Court.

Additionally, Defendant's discovery requests are plagued by abusive, compound question objections in the interrogatories explicitly restricted by Fifth Circuit jurisprudence. Trans Union is terrified of a federal judge reviewing these blatant discovery violations. This Emergency Motion is nothing more than a smokescreen to avoid an order forcing them to answer the operative discovery requests.

**C. No Enforceable Agreement Exists Under Texas Law Due to Defective Formation**

Under Texas law, a settlement agreement cannot be enforced unless there is a clear, mutual "meeting of the minds" on all essential terms. *Choice Homes, Inc. v. Lessman*, 129 S.W.3d 233, 238 (Tex. App.—Dallas 2004). Furthermore, an agreement that is missing material exhibits or terms is legally incomplete and non-executable.

6

The record is clear: Plaintiff was trapped on an iPhone screen, explicitly stated *"no binding agreement is made,"* and demanded a draft for full review. When the draft arrived, it was missing Exhibit A and packed with unnegotiated, ad-libbed corporate immunities. Plaintiff rejected it at 7:59 AM the next morning. A party cannot use a motion to enforce to force a court to rewrite a contract that was flatly rejected. Because contract formation is deeply fractured, a stay based on a "settlement" is entirely improper.

**D. A Stay Causes Acute, Irreparable Prejudice to Plaintiff's Litigation Path**

Trans Union falsely claims a stay creates no prejudice. Plaintiff is actively managing a complex statutory consumer protection case against multiple corporate entities and data-furnishing banks. The missing Interrogatory answers, Admissions, and backend technical files held exclusively by Trans Union are vital links required to prove liability across all co-defendants. Freezing discovery entirely grinds Plaintiff's prosecution to a halt and disrupts the entire scheduling order, rewarding Trans Union for its procedural non-compliance.

## IV. CONCLUSION & PRAYER FOR RELIEF

Trans Union's "Emergency" Motion to Stay is an act of procedural desperation designed to prevent this Court from seeing its discovery violations and to block Plaintiff from obtaining necessary answers to Interrogatories, Admissions, and Requests for Production.

**PREMISES CONSIDERED**, Plaintiff Robert Stafford respectfully requests that this Court **DENY** Defendant Trans Union LLC's Emergency Motion to Stay Discovery (Docket 54) with prejudice, allow the Omnibus Motion to Compel (ECF No. 50) to proceed immediately, and grant any further relief the Court deems just and proper.

7

Dated: June 15, 2026

Respectfully submitted,

**Robert Stafford**

*Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2026, a true and correct copy of the foregoing document was served via electronic mail transmission pursuant to the electronic service boundaries established under Paragraph 5 of the Court's Discovery Order (Doc. 35) upon the following counsel of record:

Paul L. Myers

Quilling Selander Lownds Winslett & Moser PC

Email: pmyers@qslwm.com

Counsel for Defendant Trans Union LLC

Jennifer R. Brooks

Seyfarth Shaw LLP

Email: jrbrooks@seyfarth.com

Counsel for Defendant Equifax Information Services LLC

Robert Stafford,

Plaintiff Pro Se

8